## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROBERT V. JONES, | ) | |
| Petitioner, | ) | Case No. CV 05-423-C-EJL |
| | ) | |
| v. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Currently pending before the Court is Robert V. Jones' Amended Complaint to Review and Set Aside the Final Decision of the Commissioner of Social Security (Docket No. 4) and Motion for Summary Judgement (Docket No. 10) wherein he seeks review of the final decision of Respondent denying his claim for Title II Social Security disability benefits. The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Report and Recommendation pursuant to 28 U.S.C. § 636(b).

## I.

## ADMINISTRATIVE PROCEEDINGS

Robert V. Jones ("Petitioner" or "Claimant") applied for disability insurance benefits under Title II of the Social Security Act alleging disability beginning October 9, 2002 due to

REPORT AND RECOMMENDATION - 1

back, knee, and ankle pain.  (AR 20, 69-71).[1]  Petitioner's earning requirements were met through December 31, 2003.  (AR 174).

Petitioner's date of birth is October 9, 1947.  (AR 27).  He has past work experience as a construction worker and a water meter reader.  (AR 21).

Petitioner's application was denied initially and again after reconsideration and a request for hearing was timely filed.  Initial hearings were held on April 21, 2004 and June 24, 2004 (AR 174) before an Administrative Law Judge ("ALJ").

Petitioner and independent medical expert Dr. Glen A. Almquist testified at the first hearing.  (AR 229-69).  Petitioner testified that he has been in pain since his alleged onset date, and that the pain has not improved since he stopped working.  (AR 246).  Petitioner described his primary source of pain in his lower back with shooting pains down his legs.  (AR 250).  In addition, Petitioner testified that past injuries to his left knee and right ankle also limit his ability to work.  (AR 250-251, AR 266-268).  Petitioner testified that he does not see the doctor very often because he lacks insurance.  (AR 252).

Petitioner testified that his pain is constant but varies in intensity depending on his activity level.  (AR 253-254).  With regard to his leisure activities, Petitioner testified that he spends the winter in Mexico (AR 250), drives occasionally (AR 247-248), hunts occasionally (AR 259-261), rides four-wheelers occasionally (AR 259-261), and walks every day when in Mexico for up to twenty (20) minutes at a time.  (AR 263).  With regard to potential work limitations, Petitioner testified that he can walk up to twenty (20) minutes at a time on flat

---

[1]  Petitioner amended the alleged onset date to October 9, 2002 at the hearing on June 24, 2004.  (AR 280).

surfaces; stand up to fifteen (15) minutes at a time; sit straight up for approximately twenty (20) minutes; and lift about twenty (20) pounds without significant problem. (AR 253). Petitioner testified that he has difficulty bending from the waist. (AR 265).

Dr. Almquist testified that the record was sufficient to reach a conclusion as to Petitioner's condition but not to the severity of the symptoms. (AR 233). Dr. Almquist found, based on the record, that Petitioner would be able to do light to medium work. (AR 238). According to Dr. Almquist, "[Petitioner] has a good back. He just has a disc pushing on a nerve." (AR 242). Dr. Almquist did not agree with Petitioner's treating physician's Physical Capacities Evaluation (AR 158), because Dr. Almquist found the conclusions inconsistent with the treatment notes and other medical records. (AR 243).

At the second, supplemental hearing, vocational expert Tom Moreland testified. (AR 270-81). Based on a hypothetical question posed by the ALJ, Mr. Moreland testified that the Petitioner could return to his past relevant work as a meter reader or could pursue other light duty jobs, including laundry worker, dump ground checker, industrial cleaner, and kitchen helper. (AR 277-78).

On cross-examination, Mr. Moreland testified that Petitioner would not be able to do his past work if he was limited in his ability to bend, stoop, kneel, and crouch. (AR 278-279). Mr. Moreland testified that these additional limitations would not affect the Petitioner's ability to perform the other, alternative jobs available in the economy; however these alternative jobs would require more than four of eight hours of standing and walking (AR 279).

On July 26, 2004, the ALJ issued an unfavorable decision finding that Petitioner retained residual functional capacity to perform medium work and therefore was not disabled within the

meaning of the Social Security Act.  (AR 174-81).  The decision notes that "[t]he evidence in this case is quite minimal."  (AR 175).

The ALJ specifically analyzed data from an October 2002 consultative evaluation (AR 175), the Petitioner's treating physician's records (AR 176), and the Physical Capacities Evaluation form completed by Petitioner's treating physician in June 2003 (AR 176).  The ALJ found the information in the physical capacity assessment form of questionable veracity, because the capacity assessment included restrictions regarding sedentary work as well as moderate restrictions for temperature changes/humidity and exposure to dust, fumes, and gases that were unsupported by the record.  (AR 176).  In addition, the ALJ found the limitations regarding sedentary work and driving contradicted by Petitioner's testimony.  (AR 177).

In determining the Petitioner's residual functional capacity, the ALJ referred to the testimony of the medical expert, Dr. Almquist; Petitioner's muscular build; the lack of evidence of treatment for his knee since 1995; Petitioner's activities, including traveling, walking on the beach, and hunting; and the evaluations of the state agency medical consultants, who found no exertional impairment limitations.  (AR 177).  Accordingly, the ALJ determined that Petitioner is able to perform a wide range of medium, light, and sedentary work activities.  (AR 178).

Petitioner appealed that decision (AR 187).  The Appeals Council remanded the decision on the basis that the medical expert did not evaluate progress reports dated May 14, 2003 and May 29, 2003.  (AR 189-90).

The ALJ conducted a supplemental hearing on May 19, 2005.  Petitioner and independent medical examiner Dr. Michael S. Gurvey testified at the supplemental hearing.  (AR 282-307).  Petitioner testified that he did not seek additional medical attention, including seeing an

orthopedic specialist, because he lacks insurance.  (AR 300).  Petitioner also testified regarding

his deteriorating health and increasingly limited activity level.  (AR 302-303).

Dr. Gurvey testified that the records in this case are "very sparse."  (AR 289).  Dr. Gurvey

noted that the primary data in the case was submitted by a family practitioner and the only

orthopedic or neurological evaluation in the record is from October 1996.  (AR 289).  According

to Dr. Gurvey, "[t]he bottom line in this case is that [Petitioner] has subjective pain but not a

great deal of objective findings."  (AR 290).  In addition, [t]he MRI findings ... don't correlate

with the objective neurological findings in this case."  (AR 290).  Thus, Dr. Gurvey ultimately

found that there was insufficient data to justify a finding that Petitioner meets or equals the

criteria under 20 CFR Pt. 404, Subpt. P, App. 1.  (AR 290).  However, Dr. Gurvey also testified

as to certain functional capacity restrictions.  (AR 290). Specifically, Dr. Gurvey found that

Petitioner could lift 20 pounds occasionally and 10 pounds frequently; could sit, walk, and stand

six of eight hours a day with standard breaks; and could balance, kneel, crouch, crawl and stoop

occasionally.  (AR 290-291).  Dr. Gurvey testified that Petitioner had the capacity to engage in a

full range of light work.  (AR 292).

On cross-examination, Dr. Gurvey further declared, "I'm giving total credibility to Mr.

Jones in giving the functional capacity restrictions.  It's not my position to take an issue as to

whether his subjective complaints are appropriate or inappropriate.  I accept them a hundred

percent."  (AR 295).

On July 20, 2005, the ALJ issued an unfavorable decision incorporating the prior decision

by reference (AR 22).  The ALJ found that Petitioner retained the residual functional capacity to

perform light work, including his past work as a water meter reader.  (AR 23-24).  In the

alternative, the ALJ found that Petitioner can perform other, light work including work as a laundry worker, checker, and kitchen helper - jobs that exist in significant numbers in the local and national economy (AR 25).

Petitioner requested that the Appeals Council review the ALJ's decision.  The Appeals Council denied Petitioner's request on August 25, 2005, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely filed this instant action. Petitioner argues that the ALJ's decision is not based upon substantial evidence and is in conflict with the rules and regulations of the Social Security Administration as well as well-settled law. Specifically, Petitioner argues that the ALJ: (1) improperly rejected Petitioner's testimony absent specific findings; (2) improperly rejected evidence and opinions of examining and treating medical sources, absent clear and convincing evidence; (3) improperly relied solely on the testimony of a non-examining, non-treating medical expert; (4) improperly found Petitioner to have a residual functional capacity to perform light work; and (5) improperly relied upon a response by the Vocational Expert at the second hearing to an incomplete hypothetical question. *Memorandum in Support of Motion for Summary Judgment*, pp. 2-3 (Docket No. 10-2). Petitioner requests that the ALJ's decision be reversed or, in the alternative, this matter be remanded for further proceedings.

## II.

### STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the

evidence at an administrative hearing, the ALJ must follow a five-part sequential process. 20 C.F.R. §§ 404.1520, 416.920 (2005). The second part of that process involves a determination regarding whether the claimant has a "severe impairment." 20 C.F.R. § 416.905(a) (2006). If no "severe" impairment is found, the claimant will be found not to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards. 42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the

REPORT AND RECOMMENDATION  - 7

conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony,

*Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel.*

*Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically

flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the

evidence is susceptible to more than one rational interpretation in a disability proceeding, the

reviewing court may not substitute its judgment or interpretation of the record for that of the

ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

   With respect to questions of law, the ALJ's decision must be based on proper legal

standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.

*See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying

the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing federal courts

must bear in mind that the Social Security Act is remedial and should be construed liberally and

"not so as to withhold benefits in marginal cases."  *Id*. at 1095 (citation omitted).

### III.

### DISCUSSION

**A.     Sequential Process**

   In evaluating the evidence presented at an administrative hearing, the ALJ must follow a

sequential process in determining whether a person is disabled within the meaning of the Act.

20 C.F.R. §§ 404.1520, 416.920 (1997).

REPORT AND RECOMMENDATION  - 8

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  If the answer is in the affirmative, disability benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity since his alleged onset date.  (AR 21).

The second step requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §404.1520(c).  The ALJ found that the medical evidence indicates Petitioner has degenerative disk disease and hypertension, impairments that are "severe" within the meaning of the Regulations.  (AR 22).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. § 404.1520(d).  In this respect, the ALJ concluded that Petitioner's impairments are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (AR 22).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(e).  In this respect, the ALJ concluded that Petitioner retains the residual functional capacity to perform essentially the full range of light work, with only occasional climbing and crawling.  (AR 23).  The ALJ stated that the evidence supports a finding that Petitioner is able to do his past relevant work as a meter reader.  (AR 24, 25).

In the fifth step, if it has been established that Petitioner can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show

that Petitioner retains the ability to do alternate work, and to demonstrate that such alternate work exists in significant numbers in the national economy.  In this respect, the ALJ found that Petitioner is able to do his past relevant work (AR 24) and, in the alternative, there are also other jobs existing in significant numbers in the national economy that Petitioner can perform such as a laundry worker, checker and kitchen helper.  (AR 25).

### B.      Analysis

The fundamental issue is whether the Commissioner's final decision– that Petitioner was not disabled– is supported by substantial evidence and free of legal error.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  Petitioner argues that the decision is not based upon substantial evidence and is in conflict with the rules and regulations of the Social Security Administration and well-settled law.  Specifically, Petitioner argues that the ALJ committed legal error by: (1) improperly rejecting Petitioner's testimony absent specific findings; (2) improperly rejecting evidence and opinions of examining and treating medical sources, absent clear and convincing evidence; (3) improperly relying solely on the testimony of a non-examining, non-treating medical expert; (4) improperly finding Petitioner to have a residual functional capacity to perform light work; and (5) improperly relying upon a response by the Vocational Expert at the second hearing to an incomplete hypothetical question.  *Memorandum in Support of Motion for Summary Judgment*, pp. 2-3 (Docket No. 10-2).

### 1.      Petitioner's Credibility

Petitioner first argues that the ALJ committed legal error by improperly rejecting Petitioner's testimony absent specific findings.  *Memorandum in Support of Motion for Summary Judgment*, p. 2 (Docket No. 10-2).

REPORT AND RECOMMENDATION  - 10

In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  In the first stage, the ALJ must determine whether a claimant who alleges disability based on subjective symptoms has produced objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged."  *Id*.  In the second stage, if the claimant produced the required objective medical evidence, the ALJ must determine whether there is evidence of malingering.  *Id.*  If not, the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so."  *Id.*

In the instant case, Respondent agrees that the "clear and convincing" standard applies to the ALJ's rejection of Petitioner's pain testimony.  *Respondent's Memorandum*, p. 5 (Docket No. 14).  The dispute hinges on whether the evidence cited by the ALJ meets the clear and convincing standard.

The ALJ determined the Petitioner's testimony was not credible based on two central factors: (1) failure to seek adequate medical treatment and (2) conflicting objective medical evidence.  The decision states:

> The undersigned has fully considered all of the evidence submitted relating to the claimant's subjective complaints, including his activities of daily living, prior work record, precipitating and aggravating factors, effectiveness and use of medication and therapy, alleged and/or demonstrated functional restrictions, and the duration, frequency, and intensity of the alleged symptoms.  The undersigned finds that the claimant is not credible.  The record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms.  There is evidence that the claimant does not have health insurance and he receives some of his medical treatment in Mexico, but he has not pursued medical treatment to the extent that would be expected for the disabling pain he described.  In addition, the claimant's disability is primarily based on his subjective complaints which are not supported

> by the medical evidence.  As the claimant is not credible, his statements
> concerning his pain, his symptoms, and his limitations are not persuasive.

*ALJ Decision*, p.4 (AR 23).

First, with regard to the frequency of Petitioner's visits to the doctor, Petitioner explains that he testified at the hearing that he has no medical insurance, his wife is unemployed, and he receives a modest pension making it too expensive to see a doctor.  *Memorandum in Support of Motion for Summary Judgment*, pp.12-13 (Docket No. 10-2).   Moreover, Petitioner argues that a doctor could not help him, since surgery has not been prescribed, and he has access to the medication he needs.  *Id.* at 13.  Second, with regard to the ALJ's finding that Petitioner's subjective claims of pain are not supported by the objective medical evidence, Petitioner cites to evidence in the record that supports his testimony regarding pain, including evidence that "he has five (5) nerve impingements in his lower spine, positive straight leg raising bilaterally on examination, loss of and decreased sensation in lower extremities, ankle reflex loss, muscle atrophy, great toe numbness, and a dull ache to sharp pain." *Id.* at 14.

In the Court's view, the ALJ's findings to reject Petitioner's credibility are sufficiently specific to allow the Court to conclude that the ALJ's decision is based on permissible grounds and that he did not arbitrarily discredit Petitioner's testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

First, the ALJ considered that Petitioner lacks health insurance and, nevertheless, found Petitioner did not see a doctor as often as one would expect given Petitioner's testimony regarding his pain.  In the Court's view, this is a reasonable conclusion.  Petitioner testified that he is in constant pain due to his lower back condition, although the severity of the pain fluctuates with his activity level.  (AR 253-54).  On a scale of 1-10, Petitioner testified that his pain is at a

baseline of 6 and gets as high as 9 depending on his activity level.  (AR 254).  Nonetheless,

Petitioner's medical records indicate that he has sought treatment for his back condition on two

occasions: June 12, 2000 (AR 155) and June 6, 2002 (AR 156), and the latter visit was part of a

disability claim process.

    Given Petitioner's pain testimony, one would reasonably expect that Petitioner would

seek medical treatment more often than twice in a two-year period.  This conclusion is not

changed by the fact that Petitioner lacks medical insurance.  Thus, the Court finds it was

reasonable for the ALJ to conclude that Petitioner's testimony regarding pain was inconsistent

with the medical treatment sought.[2]

    Second, while there is conflicting objective medical evidence in the record, there is

substantial evidence in support of the ALJ's determination that the objective medical testimony

was inconsistent with Petitioner's complaints.  For example, the ALJ noted that the 2003

magnetic resonance imaging (MRI) of Petitioner's back showed a mild disc protrusion, moderate

central canal stenosis, and mild narrowing of the left lateral recess at L3-4.  (AR 22, 160, 294).

In addition, x-rays from October 2002 show only mild to moderate degenerative disc and facet

disease.  (AR 145).

    However, independent medical expert Dr. Gurvey reviewed Petitioner's entire medical

file, including the MRI's and x-rays, and determined that Petitioner's subjective complaints were

inconsistent with the objective findings.  (AR 242-43, 290).  Furthermore, in October 2002, Dr.

Christina Bjornstad examined Petitioner and an x-ray result and also determined that Petitioner's

---

    [2]  The Court notes that the lack of medical treatment also poses a problem of proof.  The
Petitioner has the burden of proving his disability, and the lack of medical treatment results in a
lack of medical evidence to help Petitioner prove his disability claim.

REPORT AND RECOMMENDATION  - 13

subjective complaints were not supported by the objective medical evidence.  (AR 141).  Dr.

Bjornstad stated further that there were no physical reasons for Petitioner's limitations.  (AR

141).  After examining Petitioner, Dr. Bjornstad noted that  Petitioner was strong and muscular,

could bend fully, had a normal gait and a full range of motion.  (AR 140-141).

       In light of the above, the Court concludes that the ALJ had clear and convincing reasons

to support its finding that Petitioner is not credible and these reasons are supported by substantial

evidence in the record.  Together, Petitioner's infrequent trips to the doctor coupled with the

objective medical evidence conflicting with Petitioner's testimony as to the level of pain he is

experiencing provide clear and convincing support for the ALJ's determination that Petitioner is

not entirely credible.

      **2.**      **Medical Expert Testimony**

       Petitioner's second and third points of error are related.  Petitioner's second argument on

appeal is that the ALJ committed legal error by improperly rejecting evidence and opinions of

examining and treating medical sources, absent clear and convincing evidence.  *Memorandum in

Support of Motion for Summary Judgment*, p. 2 (Docket No. 10-2).  Plaintiff's third argument on

appeal is that the ALJ committed legal error by improperly relying solely on the testimony of a

non-examining, non-treating medical expert.  *Id.*

       Petitioner addresses the points of error together in his brief.  *Id.* at 14.  Petitioner takes

issue with the ALJ's reliance on the testimony of non-treating and non-observing medical

experts, rather than the testimony of the Petitioner's treating physician.

       "Cases in this circuit distinguish among the opinions of three types of physicians: (1)

those who treat the claimant (treating physicians); (2) those who examine but do not treat the

claimant (examining physicians); and (3) those who neither examine nor treat the claimant

(nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally,

"more weight should be given to the opinion of a treating source than to the opinion of doctors

who do not treat the claimant." *Id.* In turn, "[t]he opinion of an examining physician is ...

entitled to greater weight than the opinion of a nonexamining physician." *Id.* Finally, "[t]he

opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies

the rejection of the opinion of either an examining physician *or* a treating physician." *Id.* at 831.

Generally, a treating physician's opinion must be given substantial weight. *Embrey v. Bowen*,

849 F.2d 418, 422 (9th Cir. 1988). To reject the uncontradicted opinion of a treating physician,

the ALJ must state clear and convincing reasons that are supported by substantial evidence.

*Lester v. Chater*, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by

another doctor's opinion, the ALJ may reject the treating doctor's opinion by providing specific

and legitimate reasons that are supported by substantial evidence in the record. *Id.*

   The Court provides the treating physician's opinion with such deference, because "[t]he

treating physician's continuing relationship with the claimant makes him especially qualified to

evaluate reports from examining doctors, to integrate the medical information they provide, and

to form an overall conclusion as to functional capacities and limitations, as well as to prescribe

or approve the overall course of treatment." *Id.* at 833.

   In the instant case, the ALJ rejected the treating physician's opinion only with reference

to the Physical Capacities Evaluation (AR 158). This evaluation was contradicted by other

medical evidence in the record; therefore, as Petitioner admits, the ALJ may reject the testimony

REPORT AND RECOMMENDATION  - 15

of Petitioner's treating physician provided that specific and legitimate reasons are given that are supported by substantial evidence.

The ALJ's decision provides two reasons for discounting the treating physician's evaluation.  In relevant part, the decision states:

> The claimant's treating physician, Dr. Baldeck, filled out the physical capacities evaluation form in June 2003, that indicated the claimant could not work a full 8-hour day.  Exhibit F.  The undersigned gives little weight to this assessment because it was done while the claimant was present, and it was based on the claimant's subjective complaints.  In addition, Dr. Baldeck is not an orthopedist and is not a specialist at making such an assessment.

(AR 23).

This Court finds that the ALJ's justification for rejecting the treating physician's evaluation is sufficiently specific and legitimate.   The ALJ first found that the report, based solely on information provided by the Petitioner, was, therefore, suspect.  This is the logical and legitimate conclusion flowing from the ALJ's finding that Petitioner lacked credibility.  Moreover, the finding is supported by evidence in the record, which suggests that the treating physician posed all of the questions on the form to Petitioner and then wrote down Petitioner's answers.  (AR 297).  In relevant part, the transcript states:

Q      [D]id you tell him [Dr. Baldeck] you could sit 20 minutes, stand 10 minutes, walk 20 minutes, sit 2 hours in an 8-hour day, stand 1 hour in an 8-hour day, walk 2 hours in an 8-hour day?

A      Everything except for the walking.  I didn't tell him I could walk --

Q      Okay.

A      I mean in 2003 I might have, but the recent visit I didn't.

(AR 297).

REPORT AND RECOMMENDATION  - 16

Because the information in the Physical Capacities Evaluation form contains information from Petitioner, and Petitioner was deemed not entirely credible, it was reasonable for the ALJ to find the information in the Physical Capacities Evaluation suspect.  This conclusion is further buttressed by the ALJ's second rationale for rejecting the treating physician's evaluation of Petitioner.

The ALJ's second rationale for rejecting the treating physician's evaluation is that the treating physician is not an orthopedist or specialist; he is a family practitioner.  (AR 23).  This reason alone is not sufficient to reject the treating physician's evaluation.  However, in light of the conflicting evidence in the record, it was entirely permissible for the ALJ to consider the physician's training when determining whether to credit his evaluation in the face of a great deal of conflicting evidence.

The Physical Capacities Evaluation form completed by Dr. Baldeck indicates that Petitioner's physical capacity to perform work is severely limited.  (AR 158-59).  Dr. Baldeck stated that Petitioner was unable to perform even sedentary work.  (AR 159).

In contrast with this evaluation are the opinions of five other physicians.  Two nonexamining doctors from the Idaho Department of Health and Human Services found that Petitioner had the residual functional capacity to perform his previous job.  (AR 122A, 146-53).  In addition, examining physician, Dr. Bjornstad, found no objective, physical reasons for Petitioner's subjective pain.  (AR 140-41).  Although not directly on point, it certainly undermines the treating doctor's evaluation of the Petitioner's physical capacity and limitations.  Finally, the two nonexamining, nontreating independent medical experts who testified in this

case are orthopedic specialists who both found that Petitioner was capable of performing his old job or other light work.  (AR 238-39; AR 290-91).

In light of the overwhelming weight of medical evidence, it was entirely appropriate for the ALJ to reject the Physical Capacities Evaluation completed by Petitioner's treating physician.  In doing so, the ALJ considered the conflicting evidence, and made a judgment call based on specific and legitimate considerations.

### 3.        Petitioner's Residual Functional Capacity

Petitioner's fourth argument is that the ALJ committed legal error by finding Petitioner has residual functional capacity to perform light work.  *Memorandum in Support of Motion for Summary Judgment*, p. 3 (Docket No. 10-2).  While Petitioner lists this issue as a separate point of error, this issue is not discussed or otherwise delineated separately in the body of the brief.

Pursuant to Local Rule 7.1(b)(1), "[e]ach motion, other than a routine or uncontested matter, must be accompanied by a separate brief ... containing all the reasons and points and authorities relied upon by the moving party."  Dist. Idaho Loc. Civ. R. 7.1(b)(1).  Because this point of error is made without argument, the Court will not consider this argument.  Nonetheless, in light of the Court's analysis above, it is clear that the Court finds substantial evidence in support of the ALJ's determination that, as of December 31, 2003,  Petitioner had the residual functional capacity to perform light work.

### 4.  The Hypothetical Posed to the Vocational Expert

Petitioner's fifth and final argument is  that the ALJ committed legal error by improperly relying upon a response by the vocational expert to an incomplete hypothetical question.  *Memorandum in Support of Motion for Summary Judgment*, p. 3 (Docket No. 10-2).  Petitioner

argues that the hypothetical fails to account for all of the Petitioner's limitations.  "Petitioner speaks of having to take a daily nap; no prolonged stand[ing], walk[ing], or sit[ting]; inability to drive any distance; no bending at the waist; and [the hypothetical] says nothing of [Petitioner's] inability to sustain what he is able to do during one day let alone five days in a work week."  *Id.*

The ALJ did not mention the limitations listed by Petitioner because the only support for these limitations comes from the testimony of Petitioner and the Physical Capacities Evaluation completed by Petitioner's treating physician.  The ALJ rejected these sources of information and relied upon other evidence to determine Petitioner's residual functional capacity.  Because the Court has affirmed the ALJ's decision to discount these sources of information, as set forth above, this argument is moot.

## IV.

## CONCLUSION

The Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.  Accordingly, the Court will not substitute its interpretation or judgment for that of the ALJ in reaching his decision and the Commissioner's decision should be upheld.

REPORT AND RECOMMENDATION  - 19

**V.**

**RECOMMENDATION**

Based on the foregoing, this Court recommends the District Court enter an order as follows:

Robert V. Jones' Amended Complaint to Review and Set Aside the Final Decision of the Commissioner of Social Security (Docket No. 4) and Motion for Summary Judgement (Docket No. 10) should be DENIED and this action should be dismissed in its entirety with prejudice.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(b)(1) or as a result that party may waive the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals.

DATED:  **February 21, 2007**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

REPORT AND RECOMMENDATION - 20